UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**JENNIFER S.,**

    **Plaintiff,**

  v.         Case No. 24-CV-1068

**FRANK J. BISIGNANO,**
*Commissioner of the Social Security Administration*,

    **Defendant.**

---

## DECISION AND ORDER

### 1. Introduction

  Alleging she has been disabled since April 1, 2020 (Tr. 411), plaintiff Jennifer S. seeks social security disability income under Title II of the Social Security Act. After her application was denied initially (Tr. 57–62) and upon reconsideration (Tr. 63–74), a hearing was held before Administrative Law Judge (ALJ) Brian Burgtorf on November 8, 2023 (Tr. 31–56). On January 26, 2024, the ALJ issued a written decision concluding that Plaintiff was not disabled. (Tr. 12–25.) After the Appeals Council denied Plaintiff's request for review on June 25, 2024 (Tr. 1-3), Plaintiff filed this action.

All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 3, 4, 6) and the matter is ready for resolution.

**2. ALJ's Decision**

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). The ALJ found that Plaintiff "has not engaged in substantial gainful activity since April 1, 2020, the amended alleged onset date." (Tr. 17.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1522(a). The ALJ concluded that Plaintiff has the following severe impairments: "fibromyalgia, degenerative disc disease, and connective tissue disease." (Tr. 18.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month durational

requirement, 20 C.F.R. § 404.1509, the claimant is disabled. 20 C.F.R. § 404.1520(d). If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. § 404.1520(e). The ALJ found that Plaintiff's impairments did not meet or medically equal a listing impairment. (Tr. 19.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite her impairments. 20 C.F.R. § 404.1545(a)(1). In making the RFC finding, the ALJ must consider all the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 404.1545(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." Social Security Ruling 96-8P: Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *3 (July 2, 1996). The ALJ concluded that Plaintiff has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except she can occasionally climb ladders, ropes, or scaffolds, stoop, crouch, and crawl; she can frequently balance, climb ramps and stairs, and kneel; she can never work around vibration, nor hazards, such as unprotected heights or unguarded moving machinery; she can understand, remember, and carry out simple instructions, and make simple, work-related decisions.

(Tr. 19.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of her past relevant work.

20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560. The ALJ concluded that Plaintiff was unable to perform any of her past relevant work. (Tr. 23.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant can do any other work, considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c). At this step, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 24.) Representative jobs included merchandise marker (DOT number 209.587-034), cashier II (DOT number 211.462-010), and routing clerk (DOT number 222.687-022). (Tr. 24–25.) Therefore, he concluded that Plaintiff was not disabled.

### 3. Standard of Review

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex*

*rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

4. Analysis

    4.1 Subjective Symptom Assessment

Plaintiff argues that the ALJ erred by failing to properly address her subjective allegations of fibromyalgia pain and fatigue, as well as her activities of daily living. (ECF No. 14 at 2.) Plaintiff alleges any oversight is material to the RFC analysis, and ultimate disability determination, because her fibromyalgia pain and fatigue implicate her exertional abilities and the amount of time she could expect to be off task or absent from work. (ECF No. 14 at 16.)

"The Social Security Administration…recognizes the complexity of fibromyalgia and the importance of subjective evidence in assessing a claimant's ability to work." *Hohman v. Kijakazi*, 72 F.4th 248, 252 (7th Cir. 2023) (citing Social Security Ruling 12-2P: Titles II and XVI: Evaluation of Fibromyalgia, 2012 WL 3104869 (July 25, 2012) (hereinafter, Ruling 12-2P)). "For example, when objective medical evidence conflicts with a claimant's description of the intensity or persistence of pain, an ALJ must consider all evidence in the record—such as the claimant's daily activities, medications, course of

treatment, and statements by other people about the claimant's symptoms—before determining the credibility of a claimant's self-reported pain." *Id.* (citing Ruling 12-2P(IV)(B)).

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that her statements concerning the intensity, persistence and limited effects of those symptoms were not entirely consistent with the medical evidence and other evidence of record. (Tr. 20.) Therefore, the ALJ needed to consider all record evidence in relation to Plaintiff's subjective allegations of fibromyalgia symptoms. *See Hohman*, 72 F.4th at 252.

The ALJ acknowledged that Plaintiff alleged she experienced severe joint pain (globally), woke up in pain, and limited her activities to prevent additional pain. (Tr. 20.) The ALJ noted that Plaintiff reported severe fatigue daily and that she experienced difficulty with daily activities, including dressing, bathing, caring for her hair, feeding herself, and wiping herself after toileting. (Tr. 20.) The ALJ also recounted Plaintiff's claims that even little chores were almost impossible because of her back, joint, and nerve pain and that lifting a dinner plate was too heavy for her left arm. (Tr. 20.)

After describing much of Plaintiff's treatment history (Tr. 20–22), the ALJ observed that:

> the record reflects conservative treatment, primarily normal objective findings, and mild to moderate radiculopathy, degenerative changes, and some decreased sensation at times. The evidence supports a limitation to light exertion work to prevent exacerbation or worsening of her

> degenerative conditions. A limitation to unskilled work to account for the claimant's pain complaints is reasonable given the persistent complaints of the same.

(Tr. 22.) The ALJ proceeded to find the opinions of two state agency physicians (addressing mental and physical functioning, respectively) persuasive. (Tr. 23.) In summary, the ALJ concluded that "neither the objective evidence of record, nor the claimant's own statements and activities support the conclusion that she cannot perform work activities consistent with the limitations" that he set forth. (Tr. 23.)

The ALJ has an obligation to build an "accurate and logical bridge" between the evidence and his conclusion that is sufficient to enable a court to meaningfully review the administrative findings. *See Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014); *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014) ("This deferential standard of review…does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination."). The ALJ did not provide sufficient analysis to build a bridge between Plaintiff's subjective allegations and his conclusions.

Although the ALJ cited normal objective findings and unremarkable examinations (Tr. 22–23), the Court of Appeals for the Seventh Circuit has recognized that "[t]he extent of fibromyalgia pain cannot be measured with objective tests aside from a trigger-point assessment." *Gerstner v. Berryhill*, 879 F.3d 257, 264 (7th Cir. 2018) (citing *Vanprooven v.*

*Berryhill*, 864 F.3d 567 (7th Cir. 2017)); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("[I]t is difficult to determine the severity of [fibromyalgia] because of the unavailability of objective clinical tests."). The ALJ's decision does not address whether Plaintiff ever received a trigger-point assessment.

As such, Plaintiff's relatively good functioning during examination (i.e., "normal walking, a steady gait, and full strength and range of motion throughout" (R. 23)) is not substantial evidence that her fibromyalgia is not disabling. *See Sarchet*, 78 F.3d at 307 ("Since swelling of the joints is not a symptom of fibromyalgia, its absence is no more indicative that the patient's fibromyalgia is not disabling than the absence of a headache is an indication that a patient's prostate cancer is not advanced."); *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017) ("What is unusual about [fibromyalgia] is that those suffering from it have muscle strength, sensory functions, and reflexes that are normal. Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling. …The condition is diagnosed entirely on the basis of the patients' reports of pain and other symptoms.") (internal quotations, citations, and alterations omitted).

The ALJ did not attempt to make any meaning out of Plaintiff's daily activities, nor did he identify any inconsistencies or other reasons to discredit those allegations. *See* Social Security Ruling 16-3P: Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1119029, at *7 (March 16, 2016) (hereinafter Ruling 16-3P) (listing daily activities as one factor that an ALJ will use "to evaluate the intensity, persistence, and

limiting effects of an individual's symptoms"). The ALJ also did not make an explicit credibility finding or address Plaintiff's allegations of fatigue whatsoever. *See Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013) ("If the ALJ disbelieved [Plaintiff], he needed to explain that finding in order to build a logical bridge between the evidence and his conclusion.").

The Commissioner contends that the ALJ appropriately relied on Plaintiff's treatment history because the ALJ noted that Plaintiff stopped treatment multiple times. (ECF No. 22 at 5–8.) However, the ALJ observed that Plaintiff stopped treatment in his recitation of her treatment history (Tr. 21) and, without further explanation, cited "conservative treatment" to support the RFC he crafted (Tr. 22). The ALJ's succinct reference to "conservative treatment" does not reflect whether he was concerned with Plaintiff's intermittent treatment and/or the less-aggressive nature of her treatment. (Tr. 22.) The analysis of timing and intensity is significant because conservative treatment in fibromyalgia cases does not necessarily mean that a claimant is not disabled. *See Gebauer v. Saul*, 801 F. App'x 404, 410 (7th Cir. 2020) ("An ALJ must consider the longitudinal record of a fibromyalgia patient because symptoms can wax and wane.") (citing Ruling 12-2P(VI)(D)); *Lanzi-Bland v. Berryhill*, No. 16C8856, 2017 WL 4797529, at *7 (N.D. Ill. Oct. 24, 2017) ("[T]he ALJ's characterization of Claimant's treatment as conservative misapprehends the medical options available for treating fibromyalgia. Because there is no cure for fibromyalgia, treatment options are constrained to

nonnarcotic pain relievers, exercise, and stress-reduction measures." (citing webpage by Mayo Clinic)).

The Commissioner attempts to fill in the gap with references to medical evidence of record that *could* support the ALJ's conclusion. (ECF No. 22 at 6–8 (*e.g.*, citing evidence that Plaintiff declined to participate in physical therapy).) But this court's review is limited to the reasons provided by the ALJ. *See Jelinek*, 662 F.3d at 811 ("We limit our review to the reasons articulated by the ALJ in the written decision.") (citing *SEC v. Chenery*, 318 U.S. 80, 93–94 (1943)). The ALJ did not offer any reason or record citation to support his reliance on Plaintiff's "conservative treatment." *See Swiecichowski v. Dudek*, 133 F.4th 751, 759–60 (7th Cir. 2025) ("[T]he ALJ simply noted [Plaintiff's] 'conservative' treatment, seemingly as an afterthought, without providing further discussion or citation to the record. Such a cursory statement is insufficient to remedy the decision's shortcomings.").

The ALJ failed to articulate how Plaintiff's fibromyalgia pain and fatigue related to her functional abilities or what limitations were not as severe as Plaintiff alleged. Because the ALJ did not construct an accurate and logical bridge, this claim warrants reversal. The ALJ shall reevaluate Plaintiff's subjective symptoms on remand.

**4.2 Supportability of Prior Administrative Medical Findings**

Plaintiff argues that the ALJ also erred by failing to address the supportability of the administrative medical findings provided by the state agency consultant, Dr. Charles Murphy, who reviewed Plaintiff's claim on reconsideration. (ECF No. 14 at 17.)

An ALJ is required to address the supportability factor when considering the persuasiveness of a medical opinion or prior administrative medical finding. *See* 20 C.F.R. § 404.1520c(b)(2). In explaining how an ALJ is to assess an opinion's "supportability," the regulations provide, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

The Commissioner argues that the ALJ addressed the supportability of Dr. Murphy's findings and, even if he did not, there can be no error because the ALJ assessed greater functional restrictions than those opined by Dr. Murphy (or any medical source in the record). (ECF No. 22 at 12–13; *see also Dudley v. Berryhill*, 773 F. App'x 838, 843 (7th Cir. 2019) ("When no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error.") (citing *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004)).)

The ALJ stated that Dr. Murphy's findings were "consistent with and supported by the medical and other evidence of record." (Tr. 23.) The ALJ's use of "consistent" and

"supported" suggests that he was attempting to combine the supportability and consistency analyses. *See* 20 C.F.R. § 404.1520c(b)(2) (requiring an ALJ to explain how he or she considers the two most important factors (supportability and consistency) for how persuasive a medical opinion is). The supportability factor counsels "that ALJs should give more weight to medical opinions with more internal explanation and support than to those without." *Bakke v. Kijakazi*, 62 F.4th 1061, 1068 (7th Cir. 2023). Consistency, on the other hand, concerns the degree to which a medical opinion comports with other evidence in the record. *See id.*

The ALJ's subsequent commentary on Dr. Murphy's medical findings stated in full:

> Although the claimant frequently reports pain associated with several conditions, including neuropathy, fibromyalgia, an unspecified connective tissue disorder, arthritis, and degenerative changes, examinations have been generally unremarkable, including imaging and specialized diagnostic testing. The claimant has been observed to have normal walking, a steady gait, and full strength and range of motion throughout, but with decreased sensation noted at times.

(Tr. 23.)

Although the ALJ did not provide record citations, these observations plainly relate to both Dr. Murphy's internal explanation *and* the other medical evidence in the record. Dr. Murphy did not have the opportunity to examine Plaintiff, so his explanation necessarily relied on the other medical evidence in the record. (*See* Tr. 64–65 (listing the record evidence received by the state agency).) For example, Dr. Murphy's RFC

explanation includes references to a variety of Plaintiff's treatment notes that mirror the ALJ's explanation, including those which indicate normal posture and gait, normal muscle strength, and some decreased sensation. (Tr. 72.)

Even in the assessment of a medical report's persuasiveness, "an ALJ is subject 'to only the most minimal of articulation requirements.'" *Cain v. Bisignano*, No. 24-1590, ___ F.4th ___, 2025 WL 2202133, at *3, 2025 U.S. App. LEXIS 19502, at *9 (7th Cir. Aug. 4, 2025) (quoting *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024)). On this record, the ALJ satisfied this low bar with respect to the supportability of Dr. Murphy's medical findings. Therefore, the ALJ did not commit legal error in analyzing Dr. Murphy's report.

## 5. Conclusion

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **reversed** and, pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further proceedings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 2nd day of September, 2025.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge

13
Case 1:24-cv-01068-WED    Filed 09/02/25    Page 13 of 13    Document 26